**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANET H. FOISIE,<br>    A Florida resident<br><br>    Plaintiff,<br><br>vs.<br><br>WORCESTER POLYTECHNIC INSTITUTE,<br>    A Massachusetts corporation<br><br>    Defendant. | CIVIL ACTION NO.:<br><br><br><br><br><br><br><br>March 3, 2017 |

**COMPLAINT**

This is an action to recover money fraudulently transferred to defendant Worcester Polytechnic Institute by plaintiff Janet Foisie's ex-husband, nonparty Robert Foisie. Robert Foisie hid millions of dollars in assets from Janet Foisie in an offshore account in Switzerland, and then, subsequent to their divorce, transferred the money to the university, his alma mater. Because he did so with actual intent to hinder, delay, and/or defraud Janet Foisie, the transfer is avoidable, and Janet Foisie may recover from the university, as well as from Robert Foisie, in fraudulent transfer.

**INTRODUCTION**

**PARTIES**

1.    Plaintiff Janet H. Foisie ("Janet") is an individual residing at 2525 Gulf of Mexico Drive, Long Boat Key, Florida 34228.

2.    Defendant Worcester Polytechnic Institute ("WPI") is a corporation organized under the laws of the Commonwealth of Massachusetts, with its principal place of business at 100 Institute Road, Worcester, Massachusetts 01609, and is a university.

## JURISDICTION AND VENUE

3. This court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. Plaintiff Janet is a citizen of the State of Florida. Defendant WPI is a corporation incorporated under the laws of the Commonwealth of Massachusetts with its principal place of business in the Commonwealth of Massachusetts. The amount in controversy, without interest and costs, exceeds the sum or value of $75,000.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1), (b)(2), and (c)(2) and 28 U.S.C. § 1332. Defendant WPI transacted business in this District and has interest in property in this District. Therefore, Defendant WPI resides in this District for federal venue purposes. In addition, a substantial part of the property at issue, which exceeds the sum or value of $75,000, exclusive of interest and costs, is situated in the Commonwealth of Massachusetts, and venue is thus further appropriate under 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

*Robert's Financial Deception During His Divorce from Janet*

5. In or about September 2010, after approximately fifty years of marriage, Janet and her then-husband, nonparty Robert Foisie ("Robert") decided to divorce, and they jointly engaged a private mediator in West Hartford, Connecticut, to facilitate their negotiations. Janet and Robert entered into an oral agreement (the "Mediation Agreement") to make candid and complete disclosure of their assets and financial circumstances in order to facilitate a fair settlement.

6. On or about September 28, 2010, during Janet and Robert's initial meeting with the mediator in his Connecticut office, Janet and Robert agreed to equally divide their assets as part of the planned dissolution of their marriage. During the meeting, Robert enumerated the

assets that he owned and stated to Janet that he did not have "any offshore assets," or any assets other than those that he had enumerated in the meeting. The mediator memorialized the enumeration of assets and Robert's statement in a letter, dated September 28, 2010, addressed to Janet and Robert, a copy of which is hereto attached as Exhibit A.

7. On or about October 4, 2010, as part of the mediation process, Robert sent to Janet a letter (the "October 2010 Letter," copy attached hereto as Exhibit B), enclosing documents purporting to reflect "our total assets within ±1%." In the letter, Robert asked Janet "to accept the enclosed summary as accurate," and he stated that "[h]idden money or offshore assets do not exist."

8. Robert and Janet eventually reached an agreement on settlement terms, including, but not limited to, a division of the assets that had been discussed in the mediation process. In or about January, 2011, Janet commenced a marital dissolution action in the Connecticut Superior Court for the Judicial District of New London at Norwich, docket number KNO-FA-1 1-4115278-S (the "Divorce Action"), for the purpose of obtaining a stipulated judgment of dissolution on the agreed-upon terms.

9. In or about January, 2011, Janet and Robert entered into a written Marital Settlement Agreement (the "Settlement Agreement," copy attached hereto as Exhibit C), memorializing the settlement terms to which they had agreed. The Settlement Agreement included a recital that "each of the parties hereto is fully advised as to the property, prospects, and estate of the other and is aware of their respective rights and liabilities, each against the other and to and upon the property and estate of the other." By signing the Settlement Agreement, Robert affirmatively represented as a statement of fact that this recital was true, including representing that he had fully advised Janet of all of his assets.

10. In or about August, 2011, Janet and Robert submitted the Settlement Agreement to the Connecticut Superior Court in the Divorce Action, and jointly moved for a judgment of dissolution on the agreed terms. On or about September 8, 2011, the court granted the requested stipulated judgment (the "Judgment," copy attached hereto as Exhibit D).

11. In connection with the entry of judgment of dissolution of marriage, Janet and Robert mutually exchanged sworn financial statements and submitted said sworn statements to the Connecticut Superior Court, purporting to disclose all of their respective assets, subject to perjury, in their then-current "financial affidavit" forms. A copy of the sworn financial affidavit that Robert provided to Janet (the "Financial Affidavit") is attached hereto as Exhibit E.

12. The Financial Affidavit form called for the disclosure of Robert's "assets" and of his "bank accounts," without limitation or exception. By completing the form and providing it to Janet, debtor Robert impliedly represented, as a statement of fact, that all of his assets and bank accounts were listed in the Financial Affidavit. Furthermore, Robert specifically represented in the Financial Affidavit, as a statement of fact, that the disclosures therein were "true and accurate to the best of [his] knowledge and belief."

13. In the mediation process that led to the stipulation of dissolution and in the martial dissolution litigation that led to judgment upon the stipulation, Robert owed Janet a duty, equivalent to that of a fiduciary to a beneficiary, to affirmatively make full and frank disclosure of his assets.

14. In agreeing to the Settlement Agreement and in moving for the entry of judgment in accordance with those terms, Janet specifically relied upon (i) Robert's statements in the September 28, 2010, meeting and the October 2010 Letter; (ii) the recital in the Settlement Agreement that Robert had fully informed her of his assets; (iii) the truth and

completeness of the information that Robert disclosed to her in the Financial Affidavit; and (iv) Robert's profession of such truth and completeness. Robert's financial condition, and the amount of his assets, were material considerations in her decision whether to stipulate to a judgment of marital dissolution and on what terms. In particular, they were material considerations in whether and on what terms to stipulate to a division of the parties' assets.

15. Robert lied in the September 28, 2010, meeting. He lied in the October 2010 Letter. he lied in the Settlement Agreement and his Financial Affidavit. His representations that he had no offshore assets, that he had fully advised Janet of his assets, and that all of his assets were included in his Financial Affidavit, were all untrue. Furthermore, Robert knew, at the time that he made those representations, that they were untrue. In particular, Robert willfully and repeatedly failed to disclose the existence of secret offshore assets that he held, including, but not necessarily limited to, the "Valduz Trust," consisting of securities held for his benefit in Switzerland. Attached hereto as Exhibit F are copies of excerpts from certain post-judgment discovery responses that non-party debtor Robert provided in the Divorce Action, in which he acknowledges not having disclosed the existence of the Valduz Trust to Janet, and gives the value of the trust at the time of the dissolution of their marriage as $4,513,729.36.

16. In representing that he had no offshore assets and in omitting the secret Swiss assets from his disclosures, Robert intended to induce Janet to conclude that he had neither offshore assets, nor assets other than those that he had disclosed, and to rely on his narrower, false disclosures.

17. Robert's lies and omitted disclosures caused Janet to come to an incorrect conclusion about the amount of assets at issue in a dissolution of the Foisie's marriage.

Specifically, she relied on Robert's false statements and incomplete disclosures to her detriment in that (i) she agreed to a smaller award of marital assets than she would have agreed to had she known the truth, and (ii) she came to an incorrect conclusion about the value of the claims she would have had in a contested dissolution proceeding and that she forewent by agreeing to a stipulated judgment of dissolution.

18. Since the date of entry of dissolution of Janet and Robert's marriage, Robert has transferred the Valduz Trust to WPI. Attached hereto as Exhibit F are copies of excerpts from certain post-judgment discovery responses that Robert provided in the Divorce Action, in which he acknowledges having transferred the assets, supposedly in fulfillment of a prior pledge to WPI.

## CLAIMS FOR RELIEF

**First Count (fraudulent transfer pursuant to Connecticut General Statutes § 52-552e)**

19. Paragraphs 1 through 18 of the Introduction are hereby made Paragraphs 1 through 18 of the First Count as though fully set forth herein.

20. At the time that of the dissolution of the Foisie's marriage, Janet already had a claim upon the entirety of the secret Swiss assets that Robert failed to disclose to her, inasmuch as the funds were part of Robert and Janet's marital estate.

21. Furthermore, as a result of Robert's conduct as aforesaid, he is liable to Janet for the value of the Valduz Trust in fraud and/or negligent misrepresentation, breach of fiduciary duty, and/or breach of contract.

22. Robert's transfer of the secret Swiss assets WPI was made with the actual intent to hinder, delay, or defraud Janet and, therefore, is fraudulent as to Janet pursuant to Connecticut General Statutes § 52-552e(a)(1). Robert knew, at the time that he made the

transfer, that Janet already had a claim upon the assets and upon him for the assets. Nonetheless, like one laundering the proceeds of a criminal enterprise, Robert sought to dispose of the funds for a purpose of his personal preference and choosing, rather than give it to his legitimate creditor Janet, and to do so in a way that would not bring the existence of the secret Swiss assets to Janet's attention and prompt her to seek to collect on his obligation to her. Furthermore, Robert made the transfer without receiving reasonably equivalent consideration.

23. Pursuant to Connecticut General Statutes § 52-552h, non-party debtor Robert's pledge and payment to Defendant WPI are avoidable, and Janet is entitled to, *inter alia*, an injunction against further disposition of the funds by Defendant WPI, and appointment of a receiver to take charge of the transferred assets.

**Second Count (Connecticut common-law fraudulent transfer)**

22. Paragraphs 1 through 21 of the First Count are hereby made Paragraphs 1 through 21 of the Second Count as though fully set forth herein.

23. Robert's transfer of the secret Swiss assets to WPI was made with the actual intent to hinder, delay, or defraud Janet and, therefore, is fraudulent as to Janet pursuant to Connecticut common law. Robert knew, at the time that he made the transfer, that Janet already had a claim upon the assets, and upon him for the assets. Nonetheless, like one laundering the proceeds of a criminal enterprise, Robert sought to dispose of the funds for a purpose of his personal preference and choosing, rather than give it to his legitimate creditor Janet, and to do so in a way that would not bring the existence of the secret Swiss assets to Janet's attention and prompt her to seek to collect on his obligation to her. Furthermore, Robert made the transfer without receiving reasonably equivalent consideration.

24. Pursuant to Connecticut common law, Robert's transfer to WP1 is avoidable, and Janet is entitled to, *inter alia*, an injunction against further disposition of the funds by Defendant WPI, and appointment of a receiver to take charge of the transferred assets.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Janet Foisie prays that the Court enter judgment in her favor and grant her the following relief:

1. Money damages;

2. Avoidance of non-party debtor Robert Foisie's transfer(s) and obligation(s) to Defendant Worcester Polytechnic Institute, pursuant to Connecticut General Statutes § 52-552h and to common law;

3. Pursuant to Connecticut General Statutes § 52-552h and common law, a temporary injunction, during the pendency of this action, requiring Defendant Worcester Polytechnic Institute to hold, without spending, transferring, pledging as security or otherwise encumbering, any and all assets that it has received from Robert Foisie, and from any entity or trust in which he has or had an interest, and from any person or entity that holds or held the assets in his name or for his benefit, since September, 2011;

4. Appointment of a receiver to take charge of any and all assets that WPI has received from Robert Foisie, and from any entity or trust in which he has or had an interest, and from any person or entity that holds or held the assets in his name or for his benefit, since September, 2011;

5. Costs of this action; and

6. Such other and further relief as in law or equity may appertain.

Dated: March 3, 2017

Respectfully submitted,

The Plaintiff, Janet Foisie

By: /s/ *Megan Youngling Carannante*
Megan Youngling Carannante (668696)
PULLMAN & COMLEY, LLC
90 State House Square
Hartford, CT 06103
Telephone: (860) 424-4325
Fax: (860) 424-4370
mcarannante@pullcom.com

*Her Attorneys*